IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

| | |
|---|---|
| JAMES COVINGTON, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN RAILCAR INDUSTRIES, INC.,<br><br>Defendant. | Civil Action No.: 3:17-cv-00145-JLH |

**JOINT MOTION (AND INCORPORATED BRIEF) FOR FINAL APPROVAL OF THE CLASS AND COLLECTIVE ACTION SETTLEMENT**

COME NOW Plaintiff James Covington and on behalf of himself and all others similarly situated ("Plaintiff") and Defendant American Railcar Industries, Inc. ("American Railcar" or "Defendant"), and jointly submit this Motion for Final Approval of Class and Collective Action Settlement.

**I.   INTRODUCTION**

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Plaintiff and Defendant submit this memorandum in support of their motion for final approval of the settlement of these class and collective actions. The terms and conditions of the settlement are set forth in the Joint Stipulation of Settlement and Release as filed with the Court on January 18, 2018 (the "Settlement"). *See* Dkt. No. 14-1. The Settlement conclusively resolves Plaintiff's and the class's claims against Defendant. The issue before the Court is a straight-forward one: namely, whether the settlement is fair, reasonable, and adequate such that the settlement should be approved by the Court under Rule 23(e). Plaintiff and his counsel believe the settlement is a

1

favorable resolution of this Litigation and by any measure is fair, reasonable, and adequate.

The settlement is a notable achievement and reflects the substantial efforts of Plaintiff and his counsel. Without the need for protracted, arduous, and complex litigation, Plaintiff has secured a favorable settlement that provides significant benefits to the Settlement Class, both in terms of compensation for past overtime wages including shift premium pay, and securing the inclusion of shift premium pay in the calculation of employees' overtime wages going forward. But for the Plaintiff and his counsel stepping forward to prosecute this Litigation on behalf of the Settlement Class, the Settlement Class may have recovered nothing.

Defendant denies any liability on the claims asserted, and denies violating any applicable law. However, Defendant determined that, without admitting liability or fault, a settlement was preferable on the agreed-upon terms in order to avoid the cost, time and expense of litigation. Defendant's motivation for entering into the proposed settlement is to dispose expeditiously of the claims asserted against it in the Litigation by settlement and compromise rather than incur the expense and uncertainty of protracted litigation and the utilization of internal resources within the corporation, because it allows Defendant to focus on its business rather than litigation.

The settlement was reached only after counsel: (a) conducted an extensive investigation into the underlying facts, including all the allegations set forth in the operative Complaint that was filed on June 06, 2017 ("Complaint"); (b) thoroughly researched the law pertinent to Plaintiff's claims and the Defendant's defenses; (c) conducted informal discovery with the assistance of defense counsel; (d) prepared in-depth mediation statements that analyzed the merits of Plaintiff's claims and the defenses available to Defendant; and (e) conducted a successful settlement negotiations with counsel for Defendant.

After all of the above, the parties reached a settlement at a time when Plaintiff and his

counsel were fully cognizant of the strengths and weaknesses of the case, the risks of continued litigation, and the propriety of settlement.  As a result, this settlement now includes 492 class members who have returned a valid claim form and a total settlement fund of $10,000.00, all of which is available to Class Members. A separate amount of $10,000.00 is available for agreed-upon attorneys' fees and reimbursable costs and expenses incurred by Class Counsel in prosecuting these actions.  Defendant has also agreed to pay separately for all settlement administration costs and fees associated with the parties' settlement, including the mailing of class notice and distribution of settlement awards, with no reduction in the claims fund available to Class Members.

Plaintiff faced significant risks in obtaining a more favorable outcome by continuing litigation. For example, Plaintiff was faced with the formidable task of proving that Defendant failed to pay some 1,751 workers, in many different departments, working varying numbers of hours each week and paid varying hourly rates and shift premiums. Defendant denied liability and continue to deny liability, asserting that it had already properly compensated Plaintiff and the Class Members for all hours worked. If Defendant's position were accepted by the Court at summary judgment or a jury at trial, Plaintiff would not have received all or part of the damages Plaintiff obtained on behalf of the Class Members.

In short, Plaintiff faced numerous obstacles in proving both liability and damages as well as with respect to class certification.  There was no certainty, given Defendant's asserted defenses, that the Plaintiff and the Settlement Class would prevail on either liability or damages or get any classes certified.

Class Counsel, who are well-respected and experienced in prosecuting FLSA and Rule 23 collective and class actions, have concluded that the settlement is an excellent result under the

circumstances and is clearly in the best interest of the Settlement Class. This conclusion is based on all the circumstances presented here, a complete analysis of all available evidence, the substantial risks, expense and uncertainties in continuing the Litigation, the relative strengths and weaknesses of the claims and defenses asserted, the legal and factual issues presented, and past experience in litigating complex actions similar to this action.

Members of the Settlement Class appear to agree with Class Counsel's conclusion. Pursuant to the Court's preliminary approval order, a Notice of Proposed Settlement of Class Action (the "Notice") was mailed to 1,751 potential Class Members. The Notice apprised Class Members of their right, and procedures for, opting out, objecting to the settlement, or objecting to Class Counsel's application for attorneys' fees and expenses. The time to file objections expired on April 19, 2018. To date, out of 1,751 class members to whom notice was mailed, no class members have validly opted out of the settlement and **<u>no</u>** class members have objected to any aspect of the settlement, including any service award to Plaintiff and others providing service to the Settlement Class, or to Class Counsel's request for $10,000.00 in attorneys' fees **and** costs and expenses.

This overwhelming acceptance of the settlement by the Settlement Class fully supports a finding that the settlement and allocation are fair, reasonable, and adequate with respect to the Class and should be approved.

## II. THE STANDARDS FOR APPROVAL OF CLASS ACTION SETTLEMENTS

Rule 23(e) of the Federal Rules of Civil Procedure provides that class actions not be dismissed without court approval. Judicial approval of class action settlements is intended to ensure that the rights of absent class members are adequately protected. *See Amchem Prods, v. Windsor,* 521 U.S. 591, 621 (1997). As the Eighth Circuit has noted, "[t]he purpose of Rule 23(e), which prohibits class actions from being dismissed or compromised without court

approval, is to protect the rights and interests of absent class members." *Jenson v. Continental Financial Corp.*, 591 F.2d 477, 482 (8th Cir. 1979). In approving a proposed settlement of a class action in this Circuit, a court must find that the proposed settlement is both fair and adequate. *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1176 (8th Cir. 1995) (quoting *Van Horn v. Trickey*, 840 F.2d 604, 606 (8th Cir. 1988). Rule 23(e) requires the court to consider the fairness and adequacy of the settlement primarily with regard to the interests of the plaintiff class members. *In re Unitedhealth Group S'holder Derivative Litig.*, 631 F. Supp. 2d 1151, 1156 (D. Minn. 2009).

The fairness inquiry focuses on whether the settlement was reached as a result of good-faith bargaining at arm's length without collusion. *See DeBoer*, 64 F.3d at 1178. The factors which courts should consider in determining fairness are: (1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense, and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have represented the plaintiffs; (5) the opinions of class counsel and class members after receiving notice of the settlement whether expressed directly or through failure to object; and (6) the probability of plaintiffs' success on the merits and the amount of the settlement in relation to the potential recovery. *Moore v. Ackerman Investment Co.*, 2009 U.S. Dist. LEXIS 78725 (N.D. Iowa Sept. 1, 2009); *Sanderson v. Unilever Supply Chain, Inc.*, No. 10-CV-00775-FJG, 2011 U.S. Dist. LEXIS 132378 (W.D. Mo. Nov. 16, 2011).

In assessing the fairness and adequacy of a settlement, courts give a strong initial presumption that the compromise is fair and reasonable. *Little Rock School Dist. v. Pulaski County Special School Dist. No.* 1, 921 F.2d 1371, 1391 (8th Cir. 1990); *Jones v. Casey's Gen. Stores, Inc.*, 266 F.R.D. 222, 230 (S.D. Iowa 2009); *Grove v. Principal Mut. Life Ins. Co.*, 200

F.R.D. 434, 445 (S.D. Iowa 2001); Herbert B. Newberg & Alba Conte, 4 Newberg on Class Actions § 11.41 (4th ed. 2002). Therefore, it is proper for a court to limit its proceedings to whatever is necessary to reach an informed decision. In approving the settlement, the trial court does not "have the right or the duty to reach any ultimate conclusions on the issues of fact and law which underlie the merits of the dispute." *Grunin v. International House of Pancakes*, 513 F.2d 114, 123 (8th Cir. 1975).

"The policy in federal court favoring the voluntary resolution of litigation through settlement is particularly strong in the class action context." *White v. Nat'l Football League*, 822 F. Supp. 1389, 1416 (D. Minn. 1993). Courts have noted that settlements "will be upheld whenever possible because they are a means of amicably resolving doubts and preventing lawsuits." *Miller v. Republic Nat'l Life Ins. Co.*, 559 Fed 426, 428 (5th Cir. 1977) (internal citation omitted). Given the particularly complex nature of class actions, the public interest in favor of settlement weighs decidedly in favor of compromised settlements. When a court is asked to determine if a proposed settlement is appropriate, the court is not required to substitute its own judgment for that of the parties or to decide the merits of the case itself. *Grunin*, 513 F.2d at 124. In fact, when a court is reviewing a proposed settlement, the court may give considerable weight to the opinion of experienced counsel who believes that settlement is in the best interest of the class. *Pettway v. Am. Cast Iron Pipe Co.*, 576 F.2d 1157, 1216 (5th Cir. 1978).

As discussed below, application of these standards establish that this settlement is both fair and reasonable and should be approved.

### III. THE PROPOSED SETTLEMENT MEETS THE EIGHTH CIRCUIT STANDARDS FOR APPROVAL.

#### A. The proposed settlement is fair.

The settlement before the Court meets each of the prongs of the fairness standard.

### 1. The posture of the case at the time settlement was proposed and the extent of discovery favor approval.

Courts give consideration to the extent of discovery conducted to ensure that a plaintiff had access to sufficient material to evaluate his or her case on an informed basis and to assess the adequacy of the settlement in light of the strengths and weaknesses of his or her position. Here, at the time the parties reached an agreement-in-principle to a settlement, Plaintiff and his counsel had completed a process of informal discovery designed at assessing liability and damages. Class Counsel conducted a complete and extensive factual investigation into the underlying facts, including all the allegations set forth in the Complaint and Answer. This investigation revealed that Defendant did not include shift premiums paid to employees when calculating overtime wages. Also through information discovery, Class Counsel was able to review pay and time records provided by Defendant for Class Members, providing significant information relevant to settlement negotiations in this case.

During the mediation process, the parties exchanged detailed materials which further highlighted the legal and factual issues in dispute. The parties participated in settlement negotiations where the strengths and weaknesses of the claims and defenses were vigorously debated. Plaintiff also evaluated the applicable defenses that would potentially foreclose certification of a collective or class under 29 U.S.C. § 216(b) or Rule 23 or reduce any damages award to Plaintiff and the Settlement Class. Thus, Plaintiff and his counsel had sufficient information to fully evaluate the merits of the claims and defenses asserted, as well as the potential obstacles to success and the propriety of settlement. Having sufficient information to properly evaluate the case and the propriety of settlement, Plaintiff and his counsel have managed to settle the Litigation on terms highly favorable to the Settlement Class under the circumstances.

### 2. The circumstances surrounding settlement negotiations favor approval.

The settlement negotiations took place at arm's length. The settlement was very much the result of adversarial bargaining and a thorough analysis of the strengths and weaknesses of the parties' respective legal and factual positions. During settlement negotiations, Class Counsel made it clear that, while they were prepared to fairly assess the strengths and weaknesses of the claims asserted, they would continue to litigate rather than settle for less than fair value.  Attorneys' fees and costs were negotiated separately and apart from the Settlement Class' recovery.  After the monetary relief settlement was agreed to in-principle, the parties engaged in negotiations over attorneys' fees and out-of-pocket costs.  The parties finalized the settlement on January 17, 2018. The settlement reflects an informed consideration of a complex array of factual and legal issues to be encountered by Plaintiff if the case continued.

As demonstrated herein, the settlement was entered into in good faith and at arm's length. Accordingly, the settlement enjoys a presumption that it was reached without collusion and is fair, adequate, and reasonable. *In re Uponor, Inc., F1807 Plumbing Fittings Prods. Liab. Litig.*, No. 11-MD-2247, 2012 WL 2512750, at *7 (D. Minn. June 29, 2012) ("Settlement agreements are presumptively valid, *** particularly where 'a settlement has been negotiated at arm's length, discovery is sufficient, the settlement proponents are experienced in similar matters and there are few objectors.'"); *White*, 836 F. Supp. at 1484 (holding that the terms of a settlement agreement are fair, reasonable and adequate to the class because in such circumstances, the court may presume that the negotiations were proper) (citation omitted)); *In re Indep. Energy Holdings PLC,* No. 00 Civ. 6689 (SAS), 2003 WL 22244676, 4 (S.D.N.Y. Sept. 29, 2003) ("the fact that the Settlement was reached after exhaustive arm's-length negotiations, with the assistance of a private mediator experienced in complex litigation, is further proof that [the settlement] is fair

and reasonable").

### 3. The experience of counsel favors approval.

"[C]ourts give 'great weight' to and may 'rely on the judgment of experienced counsel in its [sic] evaluation of the merits of a class action settlement.'" *See In re Uponor*, 2012 WL 2512750, at *7; *White*, 836 F. Supp. at 1483; *Armstrong v. Board of Sch. Directors*, 616 F.2d 305, 325 (7th Cir. 1980) ("[W]hile the court . . . should not abdicate its responsibility to review a class action settlement merely because counsel support it, the court is entitled to rely heavily on the opinion of competent counsel"); *Welsch v. Gardebring*, 667 F. Supp. 1284, 1295 (D. Minn. 1987) (the court is to give "great weight to . . . the judgment of experienced counsel"). This case has been litigated and settled by experienced and competent counsel on both sides of the case. Class Counsel is well known for their experience and success in complex class action litigation and have many years of experience in litigating FLSA class actions. *See* Decl. of Josh Sanford ("Sanford Decl.") ¶¶ 10–13.

Based on their extensive experience and expertise, Class Counsel has determined that the settlement is in the Class's best interest, after weighing the substantial benefits of the settlement against the numerous obstacles to a better recovery after continued litigation. The recommendations of experienced and qualified counsel favor approval of the settlement. As such, each of the "fairness" factors have been satisfied and final approval is warranted.

### B. The proposed settlement is adequate.

#### 1. The strength of Plaintiff's case and the difficulties of proof and potential defenses Plaintiff was likely to encounter at trial support approval of the settlement.

##### a) The risks in establishing liability and damages favor approval.

Even if Plaintiff prevailed and obtained a substantial judgment after trial, there is little doubt

that Defendant would have appealed. The appeals process would have likely spanned several years, during which the Settlement Class would have received no distribution on any damage award. Furthermore, an appeal of any verdict would carry the risk of reversal, in which case the Class would receive no recovery after having prevailed on the claims at trial.

### b)   The uncertainty of continued litigation supports approval.

Although Class Counsel believes Plaintiff's case is meritorious, their experience has taught them how the above-mentioned factors can make the outcome of a trial extremely uncertain. There are numerous opportunities for difficulties and pitfalls along the way, including Plaintiff's counsel's ability to obtain class certification or to demonstrate willfulness. Even if Plaintiff were to prevail at trial, risks to the Settlement Class remain, including that no class would get certified. Litigation would entail a risk of low damages, denial of motion(s) for certification or even a defense verdict.

### 2.   The complexity, length, and expense of further litigation support approval of the settlement.

The issues to be determined at trial would have been complex and risky, such as proving Defendant's failure to pay proper overtime wages for a significant number of Class Members. To the extent that Plaintiff met this burden of proof, Plaintiff still risked Defendant proving that its actions were in good faith such that liquidated damages should not be awarded. And Plaintiff would also be required to prove that Defendant's failure to pay proper overtime was willful for purposes of the FLSA and AMWA in order to obtain a three-year limitations period.

No doubt exists that the settlement will spare the litigants the significant delay, risk, and expense of continued litigation. Many hours of the Court's time and resources have also been spared. Moreover, even if the Settlement Class could recover a larger judgment after a trial, the additional delay through trial, post-trial motions, and the appellate process could deny the Class

any recovery for years, which would further reduce its value. The settlement at this juncture results in a certain and substantial tangible recovery without the considerable risk, expense, and delay of additional motions, trial, and post-trial litigation. *See Reynolds v. Beneficial Nat'7 Bank*, 288 F.3d 277, 284 (7th Cir. 2002) ("To most people, a dollar today is worth a great deal more than a dollar ten years from now.").

Moreover, "[l]engthy litigation is hard on any party," but for certain classes of people it is even harder. *Rexam Inc. v. United Steel Workers of Am.*, No. 03-2998, 2005 WL 1260914, *5 (D. Minn. May 25, 2005). Members of the Settlement Class are not highly paid, and so the certainty of a monetary recovery means a lot. In addition, none of the Class Members have to take days off of work, and use valuable vacation or leave time that would otherwise be spent with their families, to prepare for and appear at trial, appear for depositions or respond to written discovery. And, given the turnover rates at the Paragould plant, if the case proceeds through trial and appeal, it will become more difficult to locate absent Class Members who might participate in any eventual recovery.

A prolonged period of discovery, pretrial proceedings and a lengthy and uncertain trial would therefore not serve the interest of the Class in light of the substantial monetary benefits provided for by the settlement when weighed against the likelihood of a larger recovery years down the road after continued litigation. The settlement affords the Settlement Class with prompt, efficient relief, while avoiding the expenses and burdens of trial – all of which strongly support approval of the settlement.

### 3. Defendant's solvency and the likelihood of recovery on a litigated judgment support settlement.

Plaintiff has assumed Defendant's solvency and given no consideration to solvency as a discount. Plaintiff did not consider this factor in reaching the settlement and does not rely upon

this consideration on this motion.

### 4. The lack of Class Member opposition to the settlement favors final approval.

The attitude of class members, as either expressed or by failure to object after notice of the settlement, is a factor to be considered by the court. *DeBoer*, 64 F.3d at 1178 ("The fact that only a handful of class members objected to the settlement similarly weighs in its favor."); *Moore*, 2009 U.S. Dist. LEXIS 78725; *Sanderson*, 2011 U.S. Dist. LEXIS 132378. In this case, notices of settlement were sent to 1,751 potential Class Members. The time period for objecting to the settlement expired on April 19, 2018. As of the date of this filing, Class Counsel have received no objections to the settlement, no objections to the service awards for Plaintiff, and no objections to Class Counsel's request for an award of attorneys' fees and expenses.

The overwhelming approval by the Class Members is an important factor in evaluating the fairness, reasonableness, and adequacy of the settlement and supports approval by the Court. *DeBoer*, 64 F.3d at 1178. As the Honorable Jeremy Fogel noted: "[T]he reaction of the class to the proffered settlement… is perhaps the most significant factor to be weighed in considering its adequacy." *In re Rambus Inc. Derivative Litig.*, No. C 06-3513 JF (HRL), 2009 WL 166689, 3 (N.D. Cal. Jan 20, 2009) (citation omitted); s*ee also Stoetzner v.U.S. SteelCorp.,* 897 F.2d 115,119 (3d Cir. 1990) (fact only 10% of class objected "strongly favors settlement"); *Nat'l Rural Telecomms. Coop v. DIRECTV, Inc.*, 221 F.R.D. 523,529 (C.D. Cal. 2004) (absence of large number of objections raises a strong presumption settlement is fair to class).

## IV.  CONCLUSION

This settlement provides substantial relief to the Settlement Class without enduring protracted litigation in a case where there was a possibility of a defense verdict or this Court denying Plaintiff's Motions for Certification. Given the presence of skilled counsel for all parties, the complexity of

the facts and law at issue, the further substantial expense if this Litigation were to continue, the risks attendant to continued litigation, the sizable present benefit of the settlement, and the arm's-length negotiations leading to settlement, the Court should find that the settlement is fair and adequate.  Neither the settlement of this Litigation nor any action taken to carry out the settlement is or may be construed as an admission, concession, or indication that Defendant or anyone else committed any wrongdoing.  Therefore, for the reasons discussed herein, the parties respectfully request that this Court grant final approval the settlement of this Litigation as fair, reasonable, and adequate and enter judgment in these actions.

Respectfully Submitted,

| **SANFORD LAW FIRM, PLLC** | **CROSS, GUNTER, WITHERSPOON & GALCHUS, P.C.** |
|---|---|
| By: /s/ Josh Sanford | B**y:** /s/ Carolyn Witherspoon |
| Chris Burks (AR Bar No. 2010207) | Carolyn B. Witherspoon (AR Bar No. 78172) |
| Josh Sanford (AR Bar No. 2001037) | 500 President Clinton Avenue, Suite 2000 |
| SANFORD LAW FIRM, PLLC | Little Rock, Arkansas 72201 |
| One Financial Center | Tel: (501) 371-9999 |
| 650 S. Shackleford, Ste. 411 | Fax: (501) 371-0035 |
| Little Rock, AR 72211 | cspoon@cgwg.com |
| Telephone: (501) 221-0088 | |
| Facsimile: (888) 787-2040 | ***ATTORNEYS FOR DEFENDANT*** |
| chris@sanfordlawfirm.com | |
| josh@sanfordlawfirm.com | |
| | |
| ***CLASS COUNSEL*** | |